## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Joy Rahaman,

                    Plaintiff,          Case No. 22-12349

v.                                      Judith E. Levy
                                        United States District Judge
Spine Specialists of Michigan and
Specialty Surgical Center,              Mag. Judge Elizabeth A. Stafford

                    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT SPECIALTY
## SURGICAL CENTER'S MOTION TO DISMISS [67]

This is one of several cases brought by Plaintiff Joy Rahaman related to her September 2016 car accident.[1] In this most recent iteration, Plaintiff, proceeding *pro se*, asserts twenty-two claims against Defendants Spine Specialists of Michigan ("SSM") and Specialty Surgical Center ("SSC"), which were involved in her treatment following the

---

[1] The Court previously dismissed two prior lawsuits brought by Plaintiff related to the same car accident. *See Rahaman v. State Farm Mut. Ins. Co.*, No. 22-10635, 2023 WL 5439212, at *1–10 (E.D. Mich. Aug. 23, 2023) (Levy, J.); *Rahaman v. Am. Connect Fam. Prop. & Cas. Ins.*, No. 20-11628, 2022 WL 4596305, at *1–8 (E.D. Mich. Sept. 30, 2022) (Levy, J.).

accident. (*See* ECF No. 1.) Before the Court is SSC's motion to dismiss. (ECF No. 67.) For the reasons set forth below, the motion is GRANTED.

## I.    Background

"On September 3, 2016, Plaintiff was involved in a car accident in which she was rear-ended by Jessica Norman. At the time of the accident, Norman was driving a car owned by Randy Saenz. The car was insured under a policy issued to Saenz by [State Farm Mutual Insurance Company]." *State Farm*, 2023 WL 5439212, at *1. "Plaintiff sued Saenz and Norman in Wayne County Circuit Court on May 25, 2017." *Id.* State Farm retained attorney Michelle Boedeker to defend Norman and Saenz in Plaintiff's third-party negligence suit in state court. *Id.*

Following the accident, Plaintiff was treated for a shoulder injury at SSM and SSC. On March 4, 2017, she underwent shoulder surgery, which was performed by Dr. Michael Bagley. Following the surgery, Plaintiff alleges that Dr. Bagley improperly discharged her without any pain medication and "with home care of 45 minutes a day for two weeks and attendant care for 4 hours a day." (ECF No. 1, PageID.10.) On March 24, 2017, Plaintiff sent a message to Defendants asking why her medical records reflected that she was taking "Zerit 20 mg and folic acid" even

though she had never been prescribed those medications. (ECF No. 1-1, PageID.85.) The following day, Plaintiff received a response from front desk manager Sharon McConnell indicating that she would follow up with Dr. Louis Radden and the nurse. (*Id.* at PageID.87.) On March 28, 2017, Plaintiff sent another message to Defendants, indicating she was "not on the folic acid either." (*Id.* at PageID.86.) According to Plaintiff, these medications are used to treat HIV.

Although difficult to follow, the complaint alleges that Dr. Bagley, Dr. Radden, McConnell, and a nurse named Shelly engaged in a far-reaching conspiracy with Boedeker to prevent Plaintiff from recovering on her third-party negligence claim. According to Plaintiff, SSC and SSM's employees falsified medical records and provided false and misleading information to Boedeker. This false information included accusations that Plaintiff was HIV-positive, used cocaine and marijuana, had a criminal record, abused alcohol, had a fifth-grade education, and suffered from ongoing mental health issues. Plaintiff further alleges that Boedeker conspired with her former attorney, Kevin Geer, to enter into a fraudulent settlement of her third-party negligence claim using a forged signature provided by Shelly.

On October 4, 2022, Plaintiff filed the complaint in this action. (ECF No. 1, PageID.6.) Following initial motion practice related to proper service and the Clerk's entry of default (*see* ECF No. 57), SSC executed a waiver of service on September 27, 2023. (ECF No. 58.) On November 27, 2023, SSC filed a motion to dismiss all claims asserted against it. (ECF No. 67.) Plaintiff filed a response (ECF No. 70), and SSC filed a reply. (ECF No. 73.)

## II.   Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual

allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Because Plaintiff is proceeding *pro se*, the Court must construe Plaintiff's filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Despite being held to less stringent standards, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citations omitted).

### III.   Analysis

#### A.   Many of Plaintiff's Claims are Untimely

SSC asserts that a number of Plaintiff's claims are barred under the applicable statutes of limitations. (ECF No. 67, PageID.1995–1997.) The Court agrees.

"The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citations omitted). "For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an

inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* Nevertheless, "dismissal is warranted if 'the allegations in the complaint affirmatively show that the claim is time-barred.'" *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). "[T]he burden is on the defendant to show that the statute of limitations has run." *Lutz*, 717 F.3d at 464 (citations omitted). "[I]f the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Id.*

### i.   *Malpractice Claims*

Plaintiff's complaint includes claims for negligence, gross negligence, "permanent scarring and disfigurement," and bad faith practices.[2] (ECF No. 1, PageID.19–21, 31–32, 41–42.) As set forth below, these claims all relate to alleged medical malpractice and are barred by the two-year statute of limitations.

---

[2] In support of her negligence and gross negligence claims, Plaintiff cites to 19 U.S.C. § 1592. (ECF No. 1, PageID.19–20.) But that enforcement provision of the Tariff Act of 1930 is not applicable here. Likewise, 18 U.S.C. § 1365—a criminal statute related to tampering with consumer products—provides no support for Plaintiff's permanent scarring and disfigurement claim. (*See* ECF No. 1, PageID.31.) Because Plaintiff is proceeding *pro se*, the Court will analyze these claims under Michigan law.

"Michigan law provides that the substance—not the label—of an allegation determines whether a plaintiff raises a medical-malpractice or a negligence claim." *Albright v. Christensen*, 24 F.4th 1039, 1043 (6th Cir. 2022) (citing *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 44 (Mich. 1999)); *see also Trowell v. Providence Hosp. & Med. Ctrs., Inc.*, 502 Mich. 509, 519 (2018) (explaining that Michigan courts "disregard the labels given to the claims and instead read the complaint as a whole, seeking the gravamen of the claims"). "[A] court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 471 Mich. 411, 422 (2004).

In considering the first question, the Michigan Supreme Court has explained:

> A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional,

that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff.

*Id.* (citations omitted). In her complaint, Plaintiff alleges a professional relationship with SSC related to her March 2017 shoulder surgery performed by Dr. Bagley. (*See* ECF No. 1, PageID.9, 14–15). Thus, Plaintiff's claims arose in the context of a professional relationship.

With respect to the second question, Michigan courts consider "whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment." *Bryant*, 471 Mich. at 424 (quoting *Dorris*, 460 Mich. at 46); *see also Meyers v. Rieck*, 509 Mich. 460, 470 (2022) (explaining that "a claim that concerns the failure to monitor and assess risks to a patient" required specialized medical judgment). Here, Plaintiff contends that she "has permanent scarring and sustained additional trauma in the form of disfigurement from the surgery." (ECF No. 1, PageID.14.) In her negligence claim, she indicates that SSC's conduct exacerbated her injuries from the accident. (*Id.* at PageID.19–20.) And in her gross negligence, permanent scarring and disfigurement, and bad faith practices claims, Plaintiff alleges that SSC harmed her by conducting additional surgical procedures without her consent, failing to

8

provide 24-hour attendant care at her home after the surgery, and not prescribing post-operative pain medication. (*Id.* at PageID.20, 32, 41.) These alleged actions or inactions of SSC all relate to the exercise of medical judgment in the context of Plaintiff's March 2017 surgery. As such, these four claims sound in medical malpractice.

Under Michigan law, a plaintiff must assert a medical malpractice claim within two years of the date the claim accrues, Mich. Comp. Laws § 600.5805(8), or "within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." Mich. Comp. Laws § 600.5838a(2). A medical malpractice claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." Mich. Comp. Laws § 600.5838a(1). With respect to the six-month discovery rule, "the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Bowman v. St. John Hosp. & Med. Ctr.*, 508 Mich. 320, 336 (2021) (quoting *Moll v. Abbott Laboratories*, 444 Mich. 1, 29 (1993)).

Here, Plaintiff alleges a variety of injuries stemming from her March 2017 shoulder surgery. Under Michigan's two-year statute of limitations, Plaintiff was required to file any medical malpractice claims against SSC related to her surgery by March 2019. However, Plaintiff did not file this action until October 4, 2022. (ECF No. 1, PageID.6.) Moreover, Plaintiff's alleged injuries, including her fall following surgery, scarring, disfigurement, pain and suffering, emotional distress, and economic losses, were either known to her or discoverable with reasonable diligence long before she filed this action.[3] As such, Plaintiff's claims are time-barred under Michigan's statute of limitations for medical malpractice.

Accordingly, Plaintiff's claims for negligence (Count 3), gross negligence (Count 4), permanent scarring and disfigurement (Count 14), and bad faith practices (Count 22) against SSC are dismissed.

---

[3] In her March 24, 2022 complaint in *Rahaman v. State Farm Mut. Ins. Co.*, Plaintiff alleged that she suffered "permanent scarring and sustained additional trauma in the form of disfigurement from the surgery." (Case No. 22-10635, ECF No. 1, PageID.12.) Thus, at a minimum, Plaintiff knew of these injuries more than six months before she filed her complaint in this case.

### ii.   *Intentional Infliction of Emotional Distress Claim*

Plaintiff's complaint also asserts a claim for intentional infliction of emotional distress ("IIED"). (ECF No. 1, PageID.21–22.) Under Michigan law, claims for IIED are subject to the general three-year statute of limitations for personal injury actions. Mich. Comp. Laws § 600.5805(2); *Nelson v. Ho*, 222 Mich. App. 74, 85 (1997). This limitations period begins to run "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827. Here, Plaintiff alleges that SSC "intentionally defamed" her "by falsifying medical reports alleging Plaintiff was 'HIV positive, uses cocaine and other illicit drugs, had mental health issues, . . . suffered from alcohol abuse, had a criminal record and was suicidal.'" (ECF No. 1, PageID.21.) The complaint and the attached exhibits indicate that this alleged conduct took place in 2017. (*See id.* at PageID.11–13; ECF No. 1-1, PageID.85–87). Because Plaintiff did not file this action against SSC until October 4, 2022 (ECF No. 1, PageID.6), her IIED claim is untimely. Accordingly, Plaintiff's IIED claim (Count 5) against SSC is dismissed.

### iii.   *Defamation Claim*

In addition to her IIED claim, Plaintiff asserts a claim for defamation.[4] (ECF No. 1, PageID.22–23.) Under Michigan law, defamation, libel, and slander claims are subject to a one-year statute of limitations. *Courser v. Allard*, 969 F.3d 604, 619 (6th Cir. 2020) (citing Mich. Comp. Laws § 600.5805(11)). "[T]he limitations period begins to run upon publication, not discovery." *Id.* (citing *Puetz v. Spectrum Health Hosps.*, 324 Mich. App. 51, 59–60 (Mich. Ct. App. 2018)). In her complaint, Plaintiff alleges that various defamatory statements were made in 2017. (ECF No. 1, PageID.11, 15–16, 23; *see also* ECF No. 1-1, PageID.48–50, 85–87, 92, 94.) But Plaintiff did not file her complaint in this case until October 4, 2022. (ECF No. 1, PageID.6.) As such, her defamation claim is barred by the one-year statute of limitations. Accordingly, Plaintiff's defamation claim (Count 6) against SSC is dismissed.

---

[4] Plaintiff asserts her defamation claim under 28 U.S.C. § 4101. (ECF No. 1, PageID.22.) That statute concerns when a United States court may recognize and enforce a foreign judgment for defamation and does not apply here. However, because Plaintiff is proceeding *pro se*, the Court will consider her defamation claim under Michigan law.

### B.    Plaintiff's Remaining Claims Fail to State a Claim

SSC also contends that all of Plaintiff's remaining claims fail to state a claim. (ECF No. 67, PageID.2002–2006.) Again, the Court agrees.

### i.    *Seventh Amendment and Rule 38 Claims*

Plaintiff asserts two claims related to her right to a jury trial. (ECF No. 1, PageID.17–18, 40–41.) However, Plaintiff's claim for violations of her right to a jury trial under the Seventh Amendment of the United States Constitution cannot succeed because that federal right does not apply to proceedings in state courts. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 418, 432 (1996) (stating that the Seventh Amendment "governs proceedings in federal court, but not in state court"). Likewise, Plaintiff may not pursue a claim based on Federal Rule of Civil Procedure 38 because the rule does not apply to state court proceedings and does not provide the basis for a cause of action. As such, Plaintiff's claims under the Seventh Amendment (Count 1) and Rule 38 (Count 21) against SSC are dismissed.

### ii.    *Civil Rights Claims*

Plaintiff's complaint asserts several civil rights claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1988. (*See* ECF No. 1, PageID.18–19, 34–

38.) As set forth below, Plaintiff fails to state a claim under any of these civil rights statutes.

First, Plaintiff asserts claim for "conspiracy to interfere with civil rights," citing 42 U.S.C. § 1985. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). To establish a claim for civil conspiracy under § 1985(3), a plaintiff must establish "(1) that a single plan existed; (2) that the alleged conspirators shared in the general conspiratorial objective to deprive the plaintiff of [her] constitutional or federal statutory rights; and (3) that an overt act was committed in furtherance of the conspiracy that caused injury." *Barkovic v. Att'y Griev. Comm'n*, 289 F. Supp. 3d 833, 843 (E.D. Mich. 2017) (citing *Hooks*, 771 F.2d at 944). Additionally, the conspiracy must "target[ ] a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework." *Post v. Trinity Health-Mich.*, 44 F.4th 572, 580 (6th Cir. 2022) (citing *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)). Here, Plaintiff appears to contend that SSC conspired with Boedeker and others to prevent her from fully recovering under her third-party

negligence claim related to the September 2016 accident. (*See* ECF No. 1, PageID.12–13, 15, 18–19.) However, Plaintiff fails to allege or explain how this conspiracy sought to deprive her of a constitutional or federal statutory right. Thus, Plaintiff does not state a claim under § 1985.

Next, Plaintiff raises a claim for "equal rights under the law" and cites to 42 U.S.C. § 1981. (*Id.* at PageID.34–35.) Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001)); *see also Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 753 (6th Cir. 2023) (explaining that § 1981 "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race"). A plaintiff asserting a § 1981 claim must "alleg[e] sufficient facts to show that (1) the plaintiff belonged to a protected class; (2) the defendant intended to discriminate against [her] on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a)." *Inner City Contracting*, 87 F.4th at 755 (citing *Amini*, 440 F.3d at 358). Here, Plaintiff asserts that SSC's actions prevented her

from pursuing her third-party negligence claim related to the September 2016 accident and that Boedeker, who was not an employee or agent of SSC, used a racial slur in an email to Plaintiff's former counsel. (*See* ECF No. 1, PageID.34–35; ECF No. 1-1, PageID.48–50.) But these allegations do not demonstrate that *SSC* engaged in discriminatory conduct that interfered with Plaintiff's ability to make or enforce *contracts*. As such, Plaintiff fails to state a claim under § 1981.

Plaintiff also asserts a claim for "deprivation of civil rights" and invokes 42 U.S.C. § 1983. (ECF No. 1, PageID.35–36.) "To succeed on a claim under § 1983, [a plaintiff] must prove that she was deprived of a right 'secured by the Constitution or laws of the United States' and that such deprivation was 'caused by a person acting under color of state law.'" *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)). "[P]rivate actors may be subject to § 1983 claims if their conduct qualifies them to be considered state actors." *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 139–40 (6th Cir. 2023) (citing *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014)). In order to constitute state action, the defendant's conduct must be "fairly attributable to the state." *Id.* at 140

(quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)). Here, Plaintiff fails to identify any basis for attributing SSC's conduct to state action. As such, she fails to state a claim under § 1983.

Finally, the complaint includes a claim for "vindication of civil rights," relying on 42 U.S.C. § 1988. (ECF No. 1, PageID.37–38.) That statute addresses the application of the common law to civil rights claims and provides for the award of attorney fees to prevailing parties in civil rights cases. *See* 42 U.S.C. § 1988(a), (b). However, § 1988 does not create a private right of action. Thus, Plaintiff cannot maintain a claim based on § 1988.

Accordingly, Plaintiff's civil rights claims (Counts 2, 16, 17, 18) against SSC are dismissed.

### iii.   *Intentional Misconduct Claim*

Next, the complaint asserts a claim labeled "intentional misconduct" and cites to 42 U.S.C. § 1791. (ECF No. 1, PageID.23–24.) However, that statute—the Bill Emerson Good Samaritan Food Donation Act—protects individuals, nonprofit organizations, and direct donors from civil and criminal liability related to food donations. *See generally* 42 U.S.C. § 1791. Plaintiff's response fails to further explain the basis for

this claim or why § 1791 applies to this case. Thus, Plaintiff's intentional misconduct claim (Count 7) against SSC is dismissed.

### iv.    *Fraud Claims*

In her complaint, Plaintiff includes five claims based on fraud. (ECF No. 1, PageID.24–30.) As set forth below, each of these claims fail to state a plausible claim.

First, Plaintiff asserts a claim for "concealment."[5] (ECF No. 1, PageID.24–25.) Under Michigan law, fraudulent concealment requires that "the party having a legal or equitable duty to disclose must have concealed the material fact with an intent to defraud." *Maurer v. Fremont Ins. Co.*, 325 Mich. App. 685, 695 (2018) (citations omitted). "A plaintiff cannot merely [allege] that the defendant failed to disclose something; instead, 'a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive.'" *Lucas v. Awaad*, 299 Mich. App. 345, 364 (2013) (citation omitted).

---

[5] In support of her concealment claim, Plaintiff cites to 18 U.S.C. § 2071. (ECF No. 1, PageID.24.) This federal criminal statute does not provide the basis for a private cause of action. However, Michigan courts do recognize the tort of "silent fraud," also referred to as fraud by nondisclosure or fraudulent concealment. *See M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 28–29 (1998). Because Plaintiff is *pro se*, the Court will liberally construe her "concealment" claim as a claim for fraudulent concealment under Michigan law.

Here, the basis for Plaintiff's claim is somewhat unclear. The complaint alleges that "SSM and SSC altered and falsified . . . Plaintiff's medical records" and that they "used her information to induce a fraudulent State Farm contract[.]" (ECF No. 1, PageID.25.) However, Plaintiff does not identify the basis for SSC's duty to disclose these alleged actions. Nor does she explain how SSC's alleged concealment induced her to enter into a contract she also asserts she never entered into. (*See id.* at PageID.16–17 (stating that the contract was "forged" and that "Plaintiff did not agree to settle her claim in state court").) Moreover, the exhibits attached to Plaintiff's complaint demonstrate that she was aware that the purported HIV medications had been added to her medical record as of March 24, 2017. (*See* ECF No. 1-1, PageID.85–87 (messages between Plaintiff and SSC regarding medications).) As such, Plaintiff fails to state a fraudulent concealment claim.

Next, Plaintiff asserts claims for "false statements" and "fraud[ulent] misrepresentation."[6] (ECF No. 1, PageID.25–27.) Under

---

[6] In support of these claims, Plaintiff cites to 18 U.S.C. § 1001 and 17 U.S.C. § 240, respectively. (ECF No. 1, PageID.25–26.) With respect § 1001, there is no private right of action to enforce this federal criminal statute. The second statute cited does not appear to exist. Nevertheless, the Court will liberally construe

Michigan law, fraud and fraudulent misrepresentation share the same six elements:

> (1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation.

*Lucas*, 299 Mich. App. at 363 (citing *Cooper v. Auto Club Ins Ass'n*, 481 Mich. 399, 408 (2008)); *Roberts v. Saffell*, 280 Mich. App. 397, 403 (2008). "An additional requirement for element five is that the plaintiff['s] reliance on the alleged misrepresentation must have been reasonable." *MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 662–63 (6th Cir. 2013) (citations omitted). Here, Plaintiff fails to demonstrate reasonable reliance on a material representation made by SSC. As such, Plaintiff has not stated a viable claim for fraud or fraudulent misrepresentation.

Plaintiff's remaining fraud claims are also without merit. The complaint asserts a claim for "fraud and swindle," citing to 18 U.S.C.

---

Plaintiff's claims as ones for fraud and fraudulent misrepresentation under Michigan law.

§ 1341. (ECF No. 1, PageID.27–29.) Plaintiff also alleges a claim for "fraud special matters," quoting from Federal Rule of Civil Procedure 9. (*Id.* at PageID.29–30.) Neither § 1341 nor Rule 9 support a private cause of action, and the Court is unable to identify any analogous state-law civil claims that have not already been addressed.

Accordingly, Plaintiff's claims for concealment (Count 8), false statements (Count 9), fraudulent misrepresentation (Count 10), fraud and swindle (Count 11), and fraud special matters (Count 12) against SSC are dismissed.

### v.   *Persons with Disability Claim*

In her thirteenth claim, "persons with disability," Plaintiff cites to 42 U.S.C. § 12102, which is the definition of "disability" under the Americans with Disabilities Act ("ADA"). (*See* ECF No. 1, PageID.30–31.) However, the ADA's definition of disability is not a cause of action, and it is unclear from the complaint which of the ADA's prohibitions Plaintiff is alleging SSC violated. Nevertheless, because Plaintiff is *pro se*, the Court will briefly consider whether any of the ADA's provisions apply.

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by

Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004). Title I is inapplicable because Plaintiff does not allege that SSC was a "covered entity" or that SSC was her employer. *See* 42 U.S.C. § 12111(2), (5). Likewise, Title II does not apply because SSC is not a public entity under the ADA. *See* 42 U.S.C. § 12131(1). Finally, "Title III of the ADA provides only injunctive relief, not monetary damages, to successful plaintiffs." *Southwell v. Summit View of Farragut, LLC*, 494 F. App'x 508, 512 (6th Cir. 2012); 42 U.S.C. § 12188. Because Plaintiff's claim seeks only monetary damages (*see* ECF No. 1, PageID.30–31), she cannot proceed under Title III. Accordingly, Plaintiff's persons with disability claim (Count 13) against SSC is dismissed.

### vi.   Violation of 42 U.S.C. § 12102

The complaint also contains a separate claim for "violation of 42 USC 12102 (2)(3)"[7] with the subheading of "serious impairment of a

---

[7] As noted above, 42 U.S.C. § 12102 is the definition of "disability" under the ADA.

22

bodily function." (ECF No. 1, PageID.32–34.) To the extent this claim seeks relief under the ADA, it fails for the reasons set forth above.

In support of this claim, Plaintiff also cites to Mich. Comp. Laws § 500.3135. (*Id.* at PageID.33.) That section of Michigan's No-Fault Act concerns "tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Mich. Comp. Laws § 500.3135(1). But Plaintiff does not allege that SSC or its employees injured her through the use of a motor vehicle. Instead, Plaintiff asserts that Dr. Bagley exacerbated her injuries from the 2016 accident. (*See, e.g.*, ECF No. 1, PageID.33.) As such, Plaintiff fails to state a claim under § 500.3135. Accordingly, this claim (Count 15) against SSC is dismissed.

### vii.   Stalking Claim

Plaintiff also asserts a claim against SSC for stalking.[8] (ECF No. 1, PageID.38–39.) Michigan law authorizes a victim of stalking to bring a

---

[8] While Plaintiff asserts her stalking claim under 18 U.S.C. § 2261A (ECF No. 1, PageID.38), that federal criminal statute covering interstate stalking does not provide a private cause of action. *See Rock v. BAE Sys.*, 556 F. App'x 869, 870–71 (11th Cir. 2014) (holding that 18 U.S.C. §§ 2261 and 2261A do not provide a private

civil action against the perpetrator. Mich. Comp. Laws § 600.2954(1).
"Stalking" is defined as "a willful course of conduct involving repeated or
continuing harassment of another individual that would cause a
reasonable person to feel terrorized, frightened, intimidated, threatened,
harassed, or molested and that actually causes the victim to feel
terrorized, frightened, intimidated, threatened, harassed, or molested."
*Id.* § 750.411h(1)(e). "'Course of conduct' means a pattern of conduct
composed of a series of 2 or more separate noncontinuous acts evidencing
a continuity of purpose." *Id.* § 750h(1)(a). The statute also defines
"harassment" as "conduct directed toward a victim that includes, but is
not limited to, repeated or continuing unconsented contact that would
cause a reasonable individual to suffer emotional distress and that
actually causes the victim to suffer emotional distress." *Id.*
§ 750.411h(1)(d).

In the complaint, Plaintiff asserts that "Dr. Michael Bagley stalked,
and drone stalked [Plaintiff] for over the past 5 years with Michelle
Boedeker, State Farm attorney." (ECF No. 1, PageID.38; *see also id.* at

---

right of action). However, because Plaintiff is proceeding *pro se*, the Court will
consider this claim under Michigan law.

PageID.10.) But the complaint fails to allege any specific instances of this alleged stalking (by drone or any other means) that would demonstrate a course of conduct or harassment as required under the statute. As such, Plaintiff fails to state a claim, and her stalking claim (Count 19) against SSC is dismissed.[9]

### viii.  Title VII Claim

Finally, Plaintiff's complaint asserts a claim for racial discrimination under Title VII. (ECF No. 1, PageID.39–40.) Under Title VII of the Civil Rights Act of 1964, "[i]t is an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national

---

[9] Even if Plaintiff had alleged specific instances of stalking, her claim against SSC would also fail because she has not demonstrated that SSC is vicariously liable for any of Dr. Bagley's alleged actions. Under Michigan law, "an employer may be held liable for the tortious conduct of its employee so long as that conduct was 'committed in the course and within the scope of the employee's employment,' but *not* if the act was outside the employee's authority or committed for the employee's own personal purposes." *Mueller v. Brannigan Bros. Rests. & Taverns LLC*, 323 Mich. App. 566, 572 (2018) (emphasis in original) (quoting *Bryant v. Brannen*, 180 Mich. App. 87, 98 (1989)). While the complaint alleges that Dr. Bagley was an employee of SSC (ECF No. 1, PageID.15), Plaintiff fails to explain how this purported stalking was within the course and scope of Dr. Bagley's employment with SSC. As such, her stalking claim against SSC fails on this additional basis.

origin[.]" 42 U.S.C. § 2000e-2(a). However, the complaint lacks any allegation that Plaintiff was employed by SSC. *See* 42 U.S.C. § 2000e(b), (f). Accordingly, Plaintiff's claim under Title VII (Count 20) against SSC is dismissed.

## IV.   Conclusion

For the reasons set forth above, Defendant Specialty Surgical Center's motion to dismiss (ECF No. 67) is GRANTED.

IT IS SO ORDERED.

Dated: August 13, 2024                    s/Judith E. Levy
Ann Arbor, Michigan                       JUDITH E. LEVY
                                          United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 13, 2024.

                                          s/William Barkholz
                                          WILLIAM BARKHOLZ
                                          Case Manager